IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


AXIS SURPLUS INSURANCE CO.                          PLAINTIFF


       v.          Case No. 1:11-CV-01028

OASIS TRADING, LLC
ARKANSAS DEVELOPMENT FINANCE
AUTHORITY, ARKANSAS ECONOMIC DEVELOPMENT COMMISSION,
WEBSTER BUSINESS CREDIT CORP.,
PARKWAY BANK and
BRADLEY LUMBER COMPANY, et al.                      DEFENDANTS

MEMORANDUM OPINION AND ORDER

       Before the Court are the following pending motions, all of
which are ripe for decision, and the Court's judgment regarding
each:

       Defendant Arkansas Economic Development Commission's ("ADEA")
Motion for Disbursal of Funds and for Dismissal (Doc. 58), which is
DENIED AS MOOT;

       Defendant Arkansas Development Finance Authority's ("ADFA")
Motion for Summary Judgment (Doc. 66), which is GRANTED;

       Defendant Oasis Trading, LLC's ("Oasis") Motion for Partial
Summary Judgment (Doc. 71), which is DENIED;

       Joint Motion to Approve Settlement Agreement (Doc. 88), which
is GRANTED;

       Defendant ADFA's Motion to Set Aside Order Granting Oasis
Leave to File Amended Crossclaim, or, Alternatively, Motion to
Dismiss Oasis's Crossclaim (Doc. 94), which is DENIED;

       Defendant Oasis's Motion for Partial Summary Judgment (Doc.

99), which is DENIED; and

Defendant ADFA's Motion to Strike Oasis's Supplemental and Amended Response to ADFA's Motion for Summary Judgment (Doc. 106), which is DENIED AS MOOT.

The Court will address the basis for decision on each of the above Motions.

I.   Background

On September 11, 2010, the premises of Defendant Bradley Lumber Company ("BLC") were partially destroyed by fire.  The main damage was to the Sawmill Building, otherwise known as Building 14, which was completely destroyed along with certain equipment and personal property contained within the building.   The entity leasing the premises of BLC at the time of the fire was Defendant Oasis Trading, LLC ("Oasis").   Prior to the fire, Oasis had purchased an insurance policy from Axis Surplus Insurance Company ("Axis"), which provided coverage against loss for the twenty-one buildings, equipment, and personal property located at BLC's premises.  The policy of insurance provided coverage from July 7, 2010, to July 7, 2011.

After the fire, Axis determined that the property damage to the Sawmill had a loss value of $1,565,700.00, in excess of the policy limit of $1,451,000.000 for that location.  The equipment destroyed in the fire was assigned a loss value of $2,696,921.72. After application of the $10,000 deductible, the net amount of loss

2

proceeds payable under the policy was $4,137,921.72.

On September 28, 2010, Axis issued a check in the amount of $250,000.00 to Oasis, the named insured. Axis then interpled the remaining sum of $3,887,921.72 to the registry of the Court, as Axis was unable to determine which of BLC's numerous creditors was entitled to receive the remaining insurance proceeds. At present, there are six creditors maintaining they are owed a portion of the interpled funds, and these creditors are now Defendants to the instant lawsuit. In many cases, BLC's creditors held overlapping notes on identical assets of BLC. The Court's task in this case is to determine the relative positions of the creditors with respect to their entitlement to the interpled funds.

A. Defendant Arkansas Economic Development Commission ("AEDC")

AEDC makes a claim to the interpled funds based on its status as lienholder on certain equipment insured by the Axis policy. The equipment included a Log Debarker System, two Carriage Optimizer Systems, a Gang Edger System, a Lumber Re-entry System, a Hardwood Planer System, and Truck Platforms. AEDC perfected its security interest in this equipment on May 7, 2003.

In the related case of *Webster Business Credit Corporation v. Bradley Lumber Company et al.*, Case Number 08-CV-1083, the Court found that BLC had defaulted on AEDC's loan regarding this equipment and entered summary judgment on behalf of AEDC on August 23, 2010, in the amount of $1,307,802.51. This judgment was to

3

accrue interest at the rate of 3.5% per annum from June 15, 2010, until paid in full.  The Court also awarded AEDC attorney's fees in the amount of $5000.00.

When the fire at the BLC premises entirely destroyed the equipment mortgaged to AEDC, Axis interpled $2,696,921.72 to cover the loss associated with all equipment destroyed in the fire.  The particular value assigned by Axis to the loss of the equipment mortgaged to AEDC was $1,800,000.00.  This amount exceeds the judgment ordered by the Court in *Webster Business Credit Corporation v. Bradley Lumber Company et al.* to compensate AEDC for BLC's default.

B.   Defendant Arkansas Development Finance Authority ("ADFA")

ADFA makes two claims to the interpled funds.  The first claim arises from a loan ADFA made to BLC, dated November 26, 2002.  This loan accompanied a security agreement which granted ADFA an interest in certain personal property of BLC, including all equipment used in connection with BLC's sawmill facility, as well as all cash and non-cash proceeds arising from the equipment. ADFA's second claim to the interpled funds concerns ADFA's status as first lienholder of BLC's real property at the sawmill facility. ADFA's mortgage on BLC's real property was issued on June 1, 2003.

BLC defaulted on its loans with ADFA, and the Court entered summary judgment in favor of ADFA on October 21, 2010, in the related case of *Webster Business Credit Corporation v. Bradley*

*Lumber Company et al.*, referenced above.  Based on BLC's default on ADFA's loans, the Court held that ADFA was owed $2,398,053.60, with interest accruing daily in the amount of $196.30, until paid in full, plus attorney's fees, costs, and expenses.

One of the buildings secured by ADFA's loan was completely destroyed in the fire on September 11, 2010.  Axis designated $1,451,000.000 of the total interpled funds to compensate for the loss of this building.  There is no dispute among the Defendants that ADFA maintains a first priority lienholder status with regard to the interpled funds for this real property.  This amount designated by Axis to compensate for the destruction of Building 14 is less than the total judgment owed by BLC to ADFA on its loans. ADFA contends that it should recover more of the interpled funds, up to the value of its total judgment against BLC, for losses incurred due to the destruction of personal property and equipment, for which ADFA also held a secured interest.

C.   Defendant Webster Business Credit Corp. ("Webster")

Webster makes a claim to the interpled funds based on its security interest and lien on all BLC assets, including equipment and machinery.  Webster and BLC entered into a credit and security agreement on October 30, 2006, and Webster's security interest was perfected by filing the proper notices with the Arkansas Secretary of State's office.  By the terms of Webster's credit agreement with BLC, Webster's security interest in the equipment collateral was

5

secondary only to ADFA's interest in the same equipment.

BLC defaulted on the note held by Webster, and the Court entered summary judgment in favor of Webster on November 29, 2011, in the related case of *Webster Business Credit Corporation v. Bradley Lumber Company et al.*, referenced above. Based on BLC's default on Webster's note, the Court concluded that Webster was owed $2,888,307.72, exclusive of attorneys' fees and interest. Even though Webster was not named by Oasis as a secured creditor on the Axis policy, Webster was and is a secured creditor of BLC's.

D. Defendant Oasis Trading, LLC ("Oasis")

On June 1, 2010, Oasis entered into a lease agreement with BLC. At the time the lease was executed, BLC had ceased to exist as a solvent entity, and the Court had become involved in adjudicating the claims of BLC's many creditors. The Court did not give its approval to the lease agreement between Oasis and BLC, but nevertheless, Oasis began occupying the BLC premises and making improvements to furnishings, fixtures, equipment, and other personal property.

When the fire occurred, Oasis claimed it sustained a loss in the amount of $1,180,319.09 related to improvements, labor, and inventory, and an additional loss in the amount of $380,000 for damage related to eight Dry Kilns, a Boiler, and a Sorter, which are all pieces of equipment. Oasis collected $250,000.00 from Axis before Axis filed the instant interpleader action, because Oasis

was the named insured on the policy of insurance.

It is not clear whether the equipment Oasis claims it lost in the fire was actually purchased and owned by Oasis or merely used by Oasis and owned by BLC, subject to the liens of BLC's creditors. Oasis asserts an equitable lien claim to the interpled funds, based on the improvements and betterments it made to the property during its tenancy.

     E.   <u>Defendant Parkway Bank ("Parkway")</u>

Parkway loaned money to Dr. David Chambers, who is the principal shareholder of BLC and other related lumber businesses operating in Bradley County, Arkansas. Parkway loaned $750,000 to Dr. Chambers for a business he owned called Q.C. Fibers, LLC. To secure the note on Q.C. Fibers, Dr. Chambers executed a real estate mortgage dated July 31, 2007, which used assets of BLC as collateral for the loan. Although Parkway was not listed on the Axis policy as a loss payee, it appears Parkway does have a perfected interest in various assets owned by BLC.

     F.   <u>Defendant Bradley Lumber Company ("BLC")</u>

BLC is the debtor in this case. In no event will BLC recoup any of the interpled funds, as the amount of those funds exceed the amount of indebtedness BLC has with respect to its various creditors.

II.  <u>Analysis of Pending Motions</u>

     A.   <u>Joint Motion to Approve Settlement Agreement (Doc. 88) and ADEA's Motion for Disbursal of Funds and for</u>

Dismissal (Doc. 58)

Pending before the Court is a Motion to Approve Settlement Agreement (Doc. 88).  All Defendants are in agreement regarding certain distributions of interpled funds to Defendant AEDC and Defendant Parkway.  Specifically, the terms of the Settlement (Doc. 81) provide that the sum of $1,000,000.00 of interpled funds shall be distributed to AEDC in full satisfaction of AEDC's claims in this case; and the sum of $100,000.00 of interpled funds shall be distributed to Parkway Bank.  Following approval of the Settlement by the Court, both AEDC and Parkway would be dismissed with prejudice from this dispute.

After due consideration, the Court finds that the Settlement (Doc. 81) is appropriate and should be approved.  Therefore, the Joint Motion to Approve Settlement Agreement (Doc. 88) is GRANTED, and the distributions specified in the Settlement are to be made by the Clerk of Court.  The sum of $1,100,000.00 shall be disbursed to Williams & Anderson PLC, Trustee, at the address designated in the Settlement.  Furthermore, all claims brought by AEDC and Parkway are accordingly dismissed with prejudice, and the two parties are hereby dismissed from this action.

In light of the Court's decision regarding approval of the parties' Settlement (Doc. 88), Defendant ADEA's pending Motion for Disbursal of Funds and for Dismissal is DENIED AS MOOT.

B.   ADFA's Motion for Summary Judgment (Doc. 66) and ADFA's Motion to Strike Oasis's Supplemental and Amended

8

<u>Response to ADFA's Motion for Summary Judgment (Doc. 106)</u>

On February 3, 2012, Defendant ADFA filed a Motion for Summary Judgment (Doc. 66) and brief in support (Doc. 67) seeking $1,451,000, the portion of interpled funds assigned to compensate for the loss of real property destroyed in the BLC fire. Defendants Oasis and BLC were the only Defendants to file a Response to the Motion (Doc. 85) along with a supporting brief (Doc. 86). Thereafter, ADFA filed a Reply (Doc. 97), and Oasis and BLC filed a Supplemental Response (Doc. 98).

In determining whether summary judgment is appropriate, the burden is placed on the moving party to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). The Court must review the facts in a light most favorable to the party opposing a motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1998). In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)).

As discussed above, ADFA has a valid lien upon the real property that was destroyed in the BLC fire and for which Axis interpled a specific dollar amount. ADFA also has a valid judgment, entered by the Court in *Webster Business Credit Corporation v. Bradley Lumber Company et al.*, for an amount greater than that designated by Axis to compensate for the loss of property. The Court determined in the related *Webster* case that BLC defaulted on its loan obligation with ADFA with respect to ADFA's secured interest in the real property of the sawmill premises. There is no genuine issue of material fact as to BLC's lack of entitlement to any of these interpled funds.

The interest of Oasis with respect to these funds arises from Oasis's rental of BLC's real property during 2010 and 2011. The lease agreement between Oasis and BLC specifically, and indeed unequivocally, provides the following:

> "[Oasis] agrees to subordinate its interest in the Property to any mortgage lender of [BLC], on the condition that such mortgage lender agrees that [Oasis's] occupancy shall not be disturbed as long as [Oasis] is not in default of any of the terms, covenants and conditions of this Lease. [Oasis] acknowledges that as of the date of this Lease its interest in the Property is subordinated to the interests of ADFA and AEDC in the Property."

(Doc. 66-3, para. 27).

Despite what appears to the Court to be very clear language stating Oasis's subordinated interest to any claim to compensation

for the destruction of the real property at issue, Oasis asserts that ADFA failed to mitigate its damages when it rejected a settlement proposal proffered earlier in the litigation by Oasis. This argument is unavailing, as settlement negotiations are both inadmissable and irrelevant to determining the priority issues in this case.    Oasis further contends that it is entitled to the insurance proceeds because Oasis made certain improvements and betterments at the sawmill facility during the course of Oasis's tenancy.    Under this theory, Oasis would potentially have an equitable lien to the insurance money; however, equitable liens only relate back to the time they were created.  *In re J.V. Gleason Co.*, 452 F.2d 1219 (8th Cir. 1971); Am. Jur. *Liens* § 72 (2012). The undisputed facts in the case at bar show that any equitable lien asserted by Oasis dates to mid-2010, when Oasis entered into the lease with BLC.  Clearly, ADFA's mortgage on the real property, issued in 2003, pre-dates the lease.

Accordingly, the Court finds that there is no genuine dispute of material fact as to ADFA's priority interest in the interpled insurance funds that were designated to compensate for the value of the loss of real property.  It is therefore the Court's judgment that ADFA's Motion for Summary Judgment (Doc. 66) should be GRANTED, and $1,451,000.00 disbursed to ADFA from the registry of the Court.  In light of the Court's decision to grant summary judgment on ADFA's Motion (Doc. 66), ADFA's pending Motion to

Strike Oasis's Supplemental and Amended Response to ADFA's Motion for Summary Judgment (Doc. 106) is DENIED AS MOOT.

   C.   <u>Defendant Oasis's Motions for Partial Summary Judgment (Docs. 71 and 99)</u>

   Oasis moves for partial summary judgment with respect to Webster's entitlement to any interest in the interpled insurance funds. In Oasis's first Motion for Partial Summary Judgment (Doc. 71), the thrust of Oasis's argument is that Webster lacks standing to assert a claim in these proceedings because Webster was not a named insured under the Axis policy of insurance. Webster has submitted a brief in response (Doc. 90) in which it contends that the interpled funds constitute "proceeds" of Webster's secured interest in BLC's equipment, thus entitling Webster to a share of these proceeds.

   The Court determined in *Webster Business Credit Corporation v. Bradley Lumber Company et al.* that Webster had a perfected security interest in the assets of BLC and ordered that BLC was liable to Webster for breach of contract. The amount of Webster's judgment against BLC is $2,888,307.72, exclusive of attorneys' fees and interest. According to Arkansas law, Webster's security interest continues in the collateral notwithstanding the sale or lease of the collateral, and its interest attaches to any identifiable proceeds of the collateral. Ark. Code Ann. § 4-9-315(a). Webster refers the Court to an Arkansas statute that defines "proceeds" to include insurance proceeds to the extent of

12

the value of the collateral and to the extent payable to the debtor
or the secured party. Ark. Code Ann. § 4-9-102(64)(E).
Considering the authority cited by Webster, there remains a genuine
issue of material fact as to whether the interpled funds constitute
"proceeds" of the collateral secured by Webster in its loan with
BLC. Accordingly, Oasis's Motion for Partial Summary Judgment
(Doc. 71) is DENIED.

Oasis's second Motion for Partial Summary Judgment (Doc. 99)
seeks to dismiss ADFA's and Webster's crossclaims (Docs. 83 and
84). ADFA and Webster have submitted virtually identical
crossclaims against Oasis, charging that Oasis improperly claimed
and converted for its own purposes $250,000.00 of the Axis
insurance proceeds. Oasis contends that principles of *res judicata*
apply to bar the Court's inquiry into Oasis's entitlement to the
$250,000.00 payment, as Axis was dismissed as an interpleader
Plaintiff to this action, and according to Oasis, this makes any
decisions Axis made regarding payment of insurance proceeds outside
the scope of the Court's purview.

The Court has never adjudicated the issue of Oasis's right to
the $250,000.00 it received from Axis for being the named insured
on the policy; therefore, *res judicata* does not apply. The payment
at issue was made to Oasis on September 28, 2010, prior to Axis
filing this interpleader action and prior to Axis submitting
interpled funds to the registry of the Court. When the Court

13

dismissed Axis from the case as an interpleader Plaintiff, it found that Axis no longer had a stake in the matter since the insurance proceeds had been deposited into the registry of the Court. The Court did not, by dismissing Axis, determine that the advance payout received by Oasis was proper.

There remains an issue of fact as to whether Oasis misrepresented to Axis that it had an ownership interest in the buildings and personal property of BLC, justifying the advance payment of $250,000.00 pursuant to the policy. Accordingly, Oasis's Motion for Partial Summary Judgment (Doc. 99) is DENIED.

D.   Defendant ADFA's Motion to Set Aside Order Granting Oasis Leave to File Amended Crossclaim, or, Alternatively, Motion to Dismiss Oasis's Crossclaim (Doc. 94)

ADFA contends in its Motion that the Court should set aside its Order of February 16, 2012 (Doc. 80), granting Oasis leave to file an amended crossclaim. In the same Order, the Court also granted leave for ADFA to file a crossclaim against Oasis.

It is in the sound discretion of the Court to permit a party to amend its pleadings if justice so requires. Fed. R. Civ. P. 15. The deadline for amending pleadings specified by the Final Scheduling Order in this case was February 14, 2012, and Oasis timely made its request to amend its pleadings. Therefore, ADFA's Motion to set aside the Court's order granting Oasis leave to file its amended crossclaim is DENIED.

In the alternative, ADFA moves the Court to dismiss Oasis's

14

amended crossclaim.  This request by ADFA is also DENIED.  A claim should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Thomas W. Garland, Inc. v. City of St. Louis*, 596 F.2d 784 (8th Cir. 1979).  All reasonable inferences from the complaint must be drawn in favor of the non-moving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).  In light of the high burden ADFA must meet justifying dismissal, the Court does not find that this burden has been met and that dismissal is appropriate at this time.

III. <u>Conclusion</u>

For the reasons reflected above, the Court finds that:

Defendant ADEA's Motion for Disbursal of Funds and for Dismissal (Doc. 58) is DENIED AS MOOT;

Defendant ADFA's Motion for Summary Judgment (Doc. 66) is GRANTED, and the sum of $1,451,000.00 shall be disbursed to ADFA from the registry of the Court;

Defendant Oasis's Motion for Partial Summary Judgment (Doc. 71) is DENIED;

The parties' Joint Motion to Approve Settlement Agreement (Doc. 88) is GRANTED, and the Clerk of Court is directed to disburse the sum of $1,100,000.00 from the registry of the Court to the Trustee designated in the Settlement Agreement (Doc. 81);

further, the claims of Defendants AEDA and Parkway are dismissed with prejudice from this lawsuit;

Defendant ADFA's Motion to Set Aside Order Granting Oasis Leave to File Amended Crossclaim, or, Alternatively, Motion to Dismiss Oasis's Crossclaim (Doc. 94) is DENIED;

Defendant Oasis's Motion for Partial Summary Judgment (Doc. 99) is DENIED; and

Defendant ADFA's Motion to Strike Oasis's Supplemental and Amended Response to ADFA's Motion for Summary Judgment (Doc. 106) is DENIED AS MOOT.

**IT IS SO ORDERED** this 21st day of March, 2012.

   /s/ Robert T. Dawson  
Honorable Robert T. Dawson  
United States District Judge